John Foley et al., Appellants, v. Gilbert M. Speir et al., Respondents.

Certain persons styling themselves the "Executive Committee" of "The Reform Association," the object of which was to promote the election of such candidates for office as should be recommended by them, hired rooms and made an estimate of such expenses as would probably be required. This included the rent for rooms, the service of a man in caring for them, and other items not included in the exceptions specified in the provisions of the statute (§ 6, tit. 7, chap. 130, Laws of 1842), which prohibits a candidate for any elective office from contributing money to promote the election of himself or other person except for certain specified purposes. A schedule of items whereon a portion of the aggregate was "set down" to defendant as his share, was shown to defendant, who had been nominated for an elective office, and he agreed to pay it. Expenses were incurred and money paid by plaintiffs, for the purpose stated. In an action to recover the portion of the expense so agreed to be paid by defendant, held, that the complaint was properly dismissed; that the contract and expenditures were in violation of said act ; also, the fact that a sum greater than the portion set down to defendant had been paid for purposes permitted by the statute did not authorize a recovery, as the agreement was entire, and the lawful consideration could not be separated from those which were illegal.

*Hurley* v. *Van Wagner* (28 Barb. 109) ; *Sizer* v. *Daniels* (66 id. 432), distinguished.

(Argued October 28, 1885 ; decided November 24, 1885.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order affirming a judgment of the General Term of the Marine Court of said city, which affirmed a judgment in favor of defendants, entered upon an order dismissing plaintiffs' complaint on trial.

The complaint in this action alleged, in substance, that the plaintiffs, together with the defendant Averill, were the executive committee of a political organization in the city of New York known as the "Reform Association," and that the defendant Speir was a candidate for the office of judge of the Superior Court of the city of New York at the election held in November, 1873. That in October, 1873, in consideration of certain expenditures to be made by said executive committee in defraying the expenses for printing and the circulation of votes, handbills and other papers, and for conveying sick, poor and infirm electors to the polls, the said Speir promised to pay to such committee the sum of $2,000 as his proportion and contribution of such expenses. That said committee, in consideration of the "promises," paid for the above purposes $8,601.63 and upward, and said Speir by the terms of his said promise became indebted to said committee in said sum of $2,000.

The material facts are stated in the opinion.

*Samuel Hand* for appellants. It was error to hold the contract proved to have been made by the defendant, even assuming that he made it "with intent to promote his own election" to the judgeship, void as prohibited by the statute. (Laws of 1842, 135, § 6 ; 1 R. S. [6th ed.] 452.) It was sufficient to authorize a recovery on that contract to show that the plaintiffs had made expenditures to the amount of the contract for the lawful purposes contemplated by it. (*Hurley* v. *Van Wagner*, 28 Barb. 112 ; *Sizer* v. *Daniels*, 66 id. 432.) The rent of the rooms was a necessary incident to the permitted purposes. (*Harley* v. *Van Wagner*, 28 Barb. 112 ; *Murphy* v. *English*,

64 How. 362; *Sizer* v. *Daniels*, 66 Barb. 432.) In England, actions to recover against candidates for Parliament for legitimate expenses of this character, for the necessary conduct of the canvass, not looking toward bribery or corruption of the voter, have been frequently maintained in the courts. (*Grant* v. *Guinness*, 17 C. B. 190; *Norton* v. *Dickson*, 5 Hurlst. & N. 637; *Thomas* v. *Edwards*, 2 M. & W. 215.)

*A. J. Vanderpoel* for respondents. The transaction between plaintiffs and defendant Speir, as set forth in the testimony of plaintiffs, was illegal and void, because prohibited by statute. (1 R. S. [6th ed.] 452, § 6; *Jackson* v. *Walker*, 5 Hill, 27; *Bell* v. *Quinn*, 2 Sandf. 148; *Barton* v. *Port Jackson, etc., Co.*, 17 Barb. 397; *Morgan* v. *Graff*, 4 id. 525; *People* v. *Thornton*, 60 How. Pr. 457; *Murphy* v. *English*, 64 How. 362; *Harris* v. *Simmonson*, 28 Hun, 318; *Hurley* v. *Van Wagner*, 28 Barb. 112; *Sizer* v. *Daniels*, 66 id. 432.) The contract being tainted with illegality as to part of the consideration is void as to the whole. (*Saratoga Co. Bk.* v. *King*, 47 N. Y. 87; *Marsh* v. *Russell*, 2 Lans. 340; *Arnott* v. *P. & E. C. Co.*, 68 id. 558; *Rose* v. *Truax*, 21 Barb. 361; *Bell* v. *Quinn*, 2 Sandf. 148; Pars. on Cont. 381; Smith on Cont. 122; Chitty on Cont. 56.) Whether the illegality which vitiates the contract springs from statutory enactment or from grounds of public policy, the rule is the same. The contract cannot be enforced whether it be *malum prohibitum* or *malum in se*. (*Pennington* v. *Kean*, 7 Wend. 278.) The alleged contract is void, because against public policy, and *contra bonos mores*. (*Harris* v. *Simmonson*, 35 Hun, 318; *Gray* v. *Hook*, 4 N. Y. 449; *Rose* v. *Truax*, 21 Barb. 361; *Mills* v. *Mills*, 40 N. Y. 543; *People* v. *Thornton*, 60 How. Pr. 457; *Marshall* v. *Baltimore, etc., Co.*, 16 How. [U. S.] 314.)

DANFORTH, J. So far as appears the plaintiffs in October, 1873, composed a body styled "The Reform Association," which was brought into being and made complete in all its parts, both of membership and officers, when they "came to-

gether and called themselves 'its executive committee.'" Its object was to promote the election of such candidates for office, irrespective of political considerations, as should be recommended by the association. Preparatory thereto they hired rooms and made an estimate of such expenses as would probably be required for that purpose at the then coming elections. A schedule of items was prepared, and of the aggregate, $2,000 "set down" thereon to the defendant as his share. This was shown to him the day after his nomination for the office of judge, and the evidence is that after looking it over, and some conversation, he said "it was all right; I will pay it." Expenses were incurred and money paid out by the plaintiffs on account thereof. This action was commenced in October, 1879, to recover the above sum of $2,000.

The answer of the defendant put the material allegations of the complaint in issue, and upon trial, after evidence had been given by the plaintiffs as to the matters above referred to, the kind and character of the services rendered, and the objects for which expenses were in fact incurred, the complaint was dismissed upon the ground that the contract and expenditures were in violation of the statutes which make it unlawful for a candidate for any elective office to contribute money to promote the election of himself or other person, except as therein stated. (Laws of 1842, chap. 130; chap. 6, tit. 7, § 6.)

No other question is presented upon this appeal, and in regard to it we concur in the conclusion reached by the trial court and affirmed by the General Term. The paper or schedule submitted to the defendant was not left with him, but retained by the plaintiffs and not produced upon the trial. They, however, testified; Foley saying, "we went on and ordered the printing and the other necessary work, and which we accomplished, we employed the necessary clerks and men to attend to the boxes, we ordered the printing and folding of ballots, and we performed all the necessary work, for which we paid out that amount of money for him and in fact more." "In all, the expenses were between $8,000 and $10,000." This included $600 rent for rooms at a hotel, and it also formed part

of the expenses to the payment of which the defendant agreed to contribute. Besides these there were also expenses in maintaining the rooms and running the association, and money paid for the general purpose of assisting the election of their candidates, but in what particular way, or for what, the plaintiff could not remember.

Another plaintiff, McLaren, referring to the same interview with the defendant, says: "The matter was talked over and a schedule was shown the judge of the probable expenses, and the amount set down for the judge as his share of them was $2,000; and my recollection of that conversation is that he said it was all right and that he would pay it. Q. Toward what purpose? A. Toward the expenses of the association. Q. State what the expenses were for? A. The expenses to be incurred were for printing ballots, supplying one man at each polling district with those ballots for election, and for boxes to be placed in each district; I think there were some five hundred in all — the expenses were to include advertising, clerk hire, room hire, postage stamps — every thing incidental to the business of an election." He also testified that the plaintiffs "had a book for each assembly district; each man took a district and enrolled the names of the voters in that district; that occasioned a great deal of work, and a considerable portion of these expenses; we had a book of each assembly district, and we took the name of each voter, his occupation, and residence; we sent out circulars saying that this enrollment would take place, and the parties would be waited upon."

The plaintiffs had been paid by other candidates on account of these expenses, but there remained unpaid a balance of $2,842.09.

Both the statute and the principles settled in *Jackson* v. *Walker* (5 Hill, 27) are decisive against the appellants. In that case the law upon the subject, after full discussion by learned and able counsel, was stated in the opinion of the court in a manner to which we think no just exception can be taken. It may have been an extreme case, but to it rules of construction were applied from which there should be no depart-

ure.    The act of 1829 (Chap. 373), was entitled "An act to pre-
serve the purity of elections." With two specified exceptions
it was declared to be unlawful to contribute money to pro-
mote an election of any particular person or ticket. The
exceptions were, (1) for defraying the expenses of printing;
(2) the circulation of votes, handbills, and other papers. A
third was added for conveying poor, sick or infirm elect-
ors to the polls. These provisions were re-enacted and now
form part of the act of 1842 (*supra*.) Every thing else is for-
bidden. The complaint recognizes and states these three things
as the cause of action. It is very clear the evidence goes be-
yond it. The agreement as proven includes the rent of rooms
— the head-quarters of this self-appointed association for pro-
moting the interest of particular candidates — and so comes
within the very letter of the case cited. So is it within the
express condemnation of the statute ; for it is not one of the
excepted purposes. So generally the claim includes "any
thing incidental to the business of an election." One thing
incidental to that event is "procuring the attendance of voters
at the polls," and that is expressly prohibited. (Statute, *supra*,
§ 6, subds. 3, 4.) So, also, and for the purpose of procuring
the election of the same candidates, was the payment of $1,000
to one of the plaintiffs for his services in taking charge of the
rooms and running the association. Upon the plaintiffs' show-
ing the agreement included illegal and forbidden items. It
would be difficult indeed to find a transaction which should
present more elements of political corruption than the one de-
vised by the plaintiffs. They present themselves to the public
under the specious and attractive guise of a reform association,
while they are in fact actuated by a desire for pecuniary profit,
and are indemnified against expenses which, professedly are
incurred in the cause of good government, by the obligations
of individuals who are personally interested in the result. We
think it is not only prohibited and made criminal by statute,
but void because contrary to public policy and the welfare of
the community.

The learned counsel for the appellants argues, however, that

as more than $2,000 was in fact expended for permitted and lawful purposes, a recovery may be had for that, although other expenditures might not be allowed. The plaintiffs have no such option. The agreement proved is an entire and single one — to pay as part of the whole expenses a single sum. It must stand, if at all, on the illegal as well as the legal considerations, for the good cannot be separated from the bad. If we could find distinct engagements for the separate items, those which are legal might be enforced ; but that is not possible. Here is but one promise upon a consideration which is in part unlawful, both by statute and as against good morals. In *Thalimer* v. *Brinkerhoff* (20 Johns. 397) it is laid down as a fundamental rule that all contracts which have for their object any thing repugnant to the general policy of the law, or contrary to the provisions of a statute, are void, and it is held as well in law as in equity, *ex turpi contractu actio non oritur.*

I have not overlooked *Hurley* v. *Van Wagner* (28 Barb. 1 2), nor *Sizer* v. *Daniels* (66 id. 432), cited by the appellants, but upon the question raised by this appeal, find nothing to make us doubt the correctness of the construction above given to the statute. In both the circumstances calling for decision were so unlike those now before us, that the judgment formed upon them cannot be regarded as conflicting with the one under review.

It should, therefore, be affirmed.

All concur.

Judgment affirmed.