(70 App. Div. 247.)

VOSBURY et al. v. MALLORY et al.

(Supreme Court, Appellate Division, Third Department.  March 5, 1902.)

1. SALE—AGENCY—CONTRACT—CONSTRUCTION.

Where a complaint in substance alleged that defendants, who were manufacturers of hats, agreed with plaintiffs, who were retail dealers, that if the latter would handle and advertise defendants' hats in preference to all other makes, and sell the same at a certain price, they would

sell plaintiffs such hats as they might order for a certain price, and defendants agreed not to sell such hat to anyone else in the vicinity, the allegations showed a contract for a sale of hats to plaintiffs, and not the creation of an agency.

**2. CONTRACT—RATIFICATION—BREACH.**

In an action for defendants' failure to deliver hats, it appearing that defendants sold plaintiffs hats, pursuant to a contract of sale, for over two years, when they refused to deliver further hats, claiming that the agent who made the contract had no authority, a contract binding on defendants was shown.

**3. SAME—EVIDENCE.**

Plaintiffs having testified that the contract was to continue so long as they were willing to advertise the hat and make it their leading one, and their evidence being uncontradicted, it was proper for the trial court to find such an agreement to have been made.

**4. SAME—DAMAGES.**

Where a manufacturer of hats agreed with a dealer to sell him a certain make of hats at a certain price, so long as the dealer should advertise such hat and sell it at a certain price, and make it his leading one, and the manufacturer agreed not to sell to any other dealer in the vicinity, in an action for failure to deliver hats as ordered, and for selling to another, it was error for the court to instruct that the jury might allow the dealer the price paid by him for hats purchased from the manufacturer and then on hand, there being nothing to show that the breach of the contract reduced the value of such hats, and the dealer, owing to the manufacturer's breach, having a right to sell for any price he could obtain.

Appeal from trial term, Broome county.

Action by Edward D. Vosbury and another against Charles A. Mallory and another. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

T. B. & L. M. Merchant, for appellants.

Harry C. Walker and Rollin W. Meeker, for respondents.

PARKER, P. J. This action is to recover damages for the breach of a contract, which is stated in the complaint, as I analyze and construe the averments therein, to have been as follows: The plaintiffs, being retail dealers in hats in Binghamton, N. Y., agreed with the defendants, who were manufacturers of the "Hawes Guarantee Hat," that they would handle, advertise, and push the sale of such hat in such city and the county of Broome, and make it their "leader" in preference to all other "makes of hats"; and in consideration thereof the defendants agreed to sell to the plaintiffs such hats as they should, from time to time, order, at the price of $24 per dozen, the plaintiffs, however, agreeing to sell the same at retail for $3 each, and the defendants further agreeing that they would sell such hat to no one in that city or locality other than the plaintiffs. Such arrangement was to continue so long as the plaintiffs "performed the conditions of such agreement on their part." The phraseology of the complaint, in some parts, would seem to charge that the plaintiffs were appointed the exclusive agents of the defendants to sell such hats for them in such county; but the explicit statement is made therein that the hats were to be purchased by the plaintiffs at the price of $24 per dozen,

and I am clearly of the opinion that, under the arrangement as therein intended to be stated, the hats were delivered to the plaintiffs, pursuant to their orders, as purchasers thereof, and became their property. The evidence given by the plaintiffs on the trial establishes a contract such as I have above stated, and that evidence is not contradicted. Such arrangement was made in March, 1897, and was acted upon by both parties until in January, 1899. During such period the plaintiffs advertised the hat largely, and made it their "leading" hat, and substantially performed the arrangement on their part. It appears that during such period they had ordered in the aggregate about 500 hats, and at the time of the refusal of the defendants to further fill their orders they had on hand 197 of such hats unsold. In January, 1899, the agent of the defendants, with whom this arrangement had been made, visited the plaintiffs, and was informed by them that they were not then prepared to say whether they could further continue the arrangement; that a dissolution of their firm was in contemplation. It was thereupon agreed between them that the plaintiffs would then give an order for hats to be used in the coming spring trade, to be considered a conditional one, and that, if the plaintiffs should within one month notify him that they wished to continue the arrangement, the order should be filled and the arrangement be continued. If they did not so notify him, the order was not to be filled, and the agreement was to end. They thereupon gave to such agent an order for eight or ten dozen hats, conditioned as above stated. Within the month these plaintiffs notified the defendants that they wished to continue the arrangement, and to have their last order given to their agent Brainard filled. The defendants replied, refusing to fill any further orders by them, and notified them that they had made arrangements to thereafter sell the hats to another party in such city. Thereafter no hats have been furnished to these plaintiffs, and the other party has been the only one in the city to whom they have been furnished. In March following, this action was commenced. It was brought to trial in September last. When the plaintiffs rested, the defendants moved for a nonsuit, which the trial court denied. No evidence being offered by the defendants, the case was sent to the jury upon the question of damages only. The jury returned a verdict of $708 against the defendants, and from the judgment entered thereon this appeal is taken.

The defendants claim that the agent Brainard had no authority to bind them by the contract which he made. But it is not contradicted but that they adopted and acted under it for about two years. And also they give, as an excuse for not further selling to the plaintiffs, that his agreement with the other party was controlling upon them. They further claim that there was no time specified in the agreement during which it was to continue, and that therefore the defendants were at liberty to withdraw from it at any time. But the plaintiffs testify that it was to continue so long as they were willing to advertise and make it their leading hat. The parties might make such an agreement if they desired, and, inasmuch as the plaintiffs' evidence to that effect is not disputed, it was properly considered by the trial court to have been so agreed. It seems, therefore, that a contract was proven upon the trial, such as is above stated; that it was still in force;

and that a breach of it was fully established. The nonsuit was therefore properly refused.

The only remaining question is whether the trial court properly instructed the jury as to the measure of damages which they were to apply to the case. It may be stated generally that, upon the repudiation of such a contract as is here shown, the value of such contract is the measure of damages to which the plaintiff is entitled. He has been deprived of such contract, and he should have its value in lieu thereof. That value must be ascertained by the jury from the nature of the contract, and the consequences naturally and plainly traceable to its breach. There is always more or less difficulty in such cases in determining what elements may be considered without violating the rule that gains or benefits which are uncertain and speculative should not be estimated. Each case depends upon its own peculiar features. The general rules concerning such cases are found in Wakeman v. Manufacturing Co., 101 N. Y. 205, 210, 4 N. E. 264, 54 Am. Rep. 676; Bernstein v. Meech, 130 N. Y. 354, 29 N. E. 255; Trust Co. v. O'Brien, 143 N. Y. 285, 38 N. E. 106; and an application of such rules to this case is not necessary here, nor could it intelligently and accurately be made until the facts of this case are more fully presented. It is clear, however, that the trial court erred in its instruction to the jury that they might allow to the plaintiffs the value of the 197 hats still on hand and unsold at the time of the breach, at the rate of $3 for each hat. Those hats had been purchased and paid for by the plaintiffs, and were their property. It was not part of the defendants' contract to guaranty their sale, nor, in any event, to receive them back at the rate of $3 apiece, nor at any price whatever. There was nothing in the contract which prevented the plaintiffs' selling these hats, after its breach, at $3 apiece, or at such price as they chose to sell them. And I am unable to understand why they could not as readily sell them during the year 1899, with another party in the city selling the new style of that year, as if they themselves were selling such new style. But be that as it may, there is no evidence in the case that the breach of the contract in any way depreciated the value of such hats. On the contrary, the evidence shows that the plaintiffs, at once upon the refusal of the defendants to continue the arrangement, packed them up and made no effort whatever to dispose of them. Nothing whatever appears to show what they lost, if anything, because of such depreciation. They are still the plaintiffs' hats. The plaintiffs still hold them as such, and yet they have recovered from the defendants the full value at the rate of $3 for each of them. Certainly such an item was not properly considered in ascertaining the value of this contract to the plaintiffs at the time it was broken, nor was it admissible under any of the rules recognized in the cases above cited. Such item makes up nearly six-sevenths of the verdict rendered. It was clearly error to instruct the jury that it was a proper item for them to consider in arriving at the damages, and for that reason this judgment must be reversed.

Judgment and order reversed, and new trial granted, with costs to appellants to abide event. All concur.