Hoffhbtmer, J.,
dissenting.
I am compelled to dissent. My reasons for so doing, stated as briefly as possible, are as follows:
There are two views to be taken of the case, either one of which, in my judgment, bars recovery. The pleaded contract, on its face, appears to be one in general restraint of trade. The promise upon which B. & Sons seek recovery is based on a consideration which, to say the least, is in part illegal. Its breach, therefore, can not be made the predicate of an action at law. The broader aspect of the case, however, carries us beyond what may appear to be the scope of the pleadings. Strictly speaking, however, this is not true. The evidence in the ease shows the pleaded contract was inextricably interwoven with another contemporaneous agreement, the manifest object and purpose of all of which was a plan to control the price and' output of spirits and alcohol — a public commodity. 1 Eddy, Combinations, Section 612, page 580.
The agreement to which I refer was the United States Spirits Association agreement. This agreement was within the contemplation of the parties at the time of the execution of the pleaded contract, as the record shows, and, as a matter of fact, it became effective the very day the pleaded contract was executed, namely, September 14, 1898. The pleaded contract, then, is a part of a plan whereby the control of the manufacture of spirits and alcohol is placed in the hands of the Standard Distilling & Distributing Company, and the distribution of the product is placed in the hands of the United States Spirits Association. By this I mean, the power is vested in the Standard Distilling & Distributing Company, the manufacturer, to fix the price of the goods to be sold to the “authorized dealers,” after which the “authorized dealers,” comprising the United States Spirits Association, agree to sell such goods to the consumer, at prices not less than those fixed by a committee of said association. The contract, therefore, contemplates not only a condition whereby the cpiantity to .be manufactured may be lessened, but the price, which formerly depended on competition, is arbitrarily left to the Standard Distilling & Distributing Company in the first instance, and to the committee of the United States Spirits As *397 sociation in the second. Can there be any doubt as to the inevitable tendency of such a contract in its effect upon the public ?
To make this plan possible, B. & Sons, as one of the prospective “authorized dealers,” agree to stop producing — to become non-producers, to sell only the alcohol and spirits of the Standard Distilling & Distributing Company, in return for which they are to receive a certain stipulated sum monthly and also rebates, part of -which it seems was to be paid to them directly and part, for their benefit, to the United States Spirits Association, of which, as already indicated, they became members. It thus appears B. & Sons were not only participants in this side contract —a contract forbidden by the statute and common law of our state, or, if the case is to be determined according to Kentucky law, of that state, also — but they were to be beneficiaries under it as well. The active participation by plaintiff below in the United States Spirits Association agreement being revealed by the evidence, the class of cases to which belong Carter-Crume Co. v. Peurrung, 86 Fed. Rep., 439; Hines v. Bank & Tr. Co., 120 Ga., 711; Armstrong v. Toler, 24 U. S. (11Wheat.), 258, cited by defendant in error, becomes inapplicable. In those cases the party seeking to recover had no knowledge or was not a participant in the alleged illegal scheme.
It is urged by defendant in error, however, that the United States Spirits Association agreement; or evidence relating to it, can not be considered by the co\irt, because not pleaded as a defense, and it is claimed the court is, therefore, limited to a consideration of the pleaded contract only. The position is not tenable. The answer denies the contract. Evidence of illegality disproves the contract as much as evidence which tends to show that, as a matter of fact, it was never executed. In Simmons v. Green, 35 Ohio St., 104, it was held that, in an action to recover damages for breach of a contract,' the averments in the answer setting up a different contract were immaterial, except that they operated to deny the making of the contract sued on. In other words, the general denial is a defense that the defendant is entitled to have passed upon and determined, and any evidence *398 which goes to show there could have been no contract, as, for example, in this case, evidence that it was an illegal contract, tends to establish that defense. See also Despatch Line v. Glenny, 41 Ohio St., 166; Oscanyan v. Arms Co., 103 U. S., 261 (opinion of Mr. Justice Field, page 266, par. 2).
Now, this evidence relating to the United States Spirits Association agreement was in the case for all purposes, and was not ruled out. It tended to prove there was no contract; and I 'think it was properly before the court for that pm’pose, under the issues. If, then, the contract sued upon was valid on its face, and not objectionable, it could not give rise to a cause of action, because it was part of a plan forbidden by both Kentucky and Ohio law and in which the plaintiff below was a participant and beneficiary. Whenever it may appear to the court that the contract sued upon, though valid on its face, is in restraint of trade, or is against public policy, -it seems the court is not even restricted to the issues joined between the parties.
The reason for the rule is clearly stated in the case of Field Cordage Co. v. Cordage Co., 6 C. C., 615, in which Judge Shauck, chief justice of Ohio, said:
“Counsel for plaintiff in error also insist that the trial court erred in overruling their objections to the evidence by which the defendant showed the negotiations between the parties, the execution of contemporaneous agreements between the defendant and other mill owners, and the subsequent correspondence and conduct of the parties touching the machinery and the business of the plaintiff. The trial court was not concerned in ascertaining the rights and duties of parties arising out of a contract confessedly valid as against every consideration of public policy. It urns chiefly concerned in ascertaining whether the contract had been entered into for purposes which a due regard to the interests of the public forbid. In its inquiry and judgment it was not even restricted to the issues joined between the parties, for it was its duty- to refuse to enforce the contract even though its validity was not challenged by either party. The materiality of the facts which this evidence tended to establish is shown by the cases cited, and the competency of the evidence is thus made to appear.”
See, also, Emery v. Candle, Co., 47 Ohio St., 320; and in *399 Baltimore & Ohio Ry. v. Coal Co., 61 Ohio St., 242, 251, Judge Shauck again says:
“That courts organized to enforce the law will not lend their countenance to a claim founded upon its violation has been long and uniformly held, except in those caess where a departure from principle is required by statute. * * A recovery in such case is not denied because of any supposed rights of the promisor, but out of that respect for the law in which the courts should not be wanting, although parties may be. The recovery will be denied however and whenever the illegality of the contract upon which a recovery is sought may be made to appear. The defense need not be interposed by the promisor. It could not be effectually waived by him. As was said by Justice Swayne, in Hall v. Coppell, 74 U. S., 542, ‘whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to .the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract, and void for the same reasons. ’ ’ ’
See, also, the opinion of Severens, J. (Lurton and Clark, JJ., concurring), in Cravens v. Carter-Crume Co., 92 Fed. Rep., 479. Upon this view of the case alone the judgment was wrong, and should have been in favor of plaintiff in error, defendant below.
If this view is not correct, then I think plaintiff in error is still entitled to judgment upon the ground first stated herein, namely, that the pleaded contract, upon its face, shows that the promise sued on was based on a consideration in part illegal. Its breach warrants no recovery. The promise of B. & Sons to cease producing was unreasonable. By applying the ordinary rules of construction to the contract, unless resort be had to transposition of words and phrases, which, in my judgment, works violence to the manifest intent of the parties, B. & Sons agree to stop producing alcohol and spirits for sale as such, not only at the Kentucky distillery, but elsewhere. In legal effect, they promise not to manufacture such articles “directly or indirectly” anywhere. This would include the entire state of Ohio. Whatever rule may obtain elsewhere — and a different rule does obtain in many jurisdictions — Ohio adheres to the earlier rule announced in Lufkin Rule Co. v. Fringeli — a restriction which is co-exten *400 sive with the lines of the state is illegal. Lufkin Rule Co. v. Fringeli, 57 Ohio St., 596; Harriman, Contracts, Sections 215, 216a.
And even if we endeavor to uphold the contract, for courts seek to uphold contracts whenever that is possible, and by some construction we limit the restriction to the Kentucky zone (Darling distillery), and hold that' the restriction, because of the limitation, is not unreasonable, it would still be void, unless it can be shown to be ancillary to some main valid contract whose purpose it furthers or subserves.
Judge Taft, in United States v. Pipe & Steel Co., 85 Fed. Rep., 271, sets out the nature of such contracts. But the contract between the parties in the instant case gives rise to none of the relations which would justify the ■ restriction as ancillary. When the demurrer was passed upon by the court below, it was assumed that the contract gave rise to and established a relation of agency as between the parties, and therefore the court overruled the demurrer.
The court believed the language employed imported agency, and that the restriction was necessary to enable the Standard Distilling & Distributing Company to enjoy the fruits of its contract. This assumption of agency was probably based on language in the petition suggestive of agency. By oversight apparent from the language of the court in its decision, Block v. Distilling & Distrib. Co., 8 N. P., 313, the court, in passing on the demurrer, had before it the original petition and not the amended petition. The latter, it appears, had been filed as a result of a motion directed to the original petition, to make the same more definite and certain. The original petition contained an averment that “it was agreed that the plaintiff should be appointed one of the authorized agents or distributors of defendant’s product.” The amended petition contains no such language, but avers “enter into a written contract by which it was agreed that the plaintiff should be one of the authorized dealers of the defendant, under an instrument appointing them such dealers, a copy of which was attached to, and made part of, said contract as Exhibit A. By said Exhibit A defendant appointed plaintiffs for five years *401 from said date one of the authorized distributors (meaning dealers) of defendant. By the word ‘dealers’ or ‘distributors’ were intended those who agreed to buy from the defendant in large quantities for the purpose of selling or distributing to the trade in smaller quantities. ’ ’
If there were any ambiguity as to the term “authorized dealers,” the court, according to the well-established rule, may look to the construction placed upon it by the parties. Here, then, we find plaintiff below expressly discarding a technical term in itself suggestive of agency for one that suggests the relation of buyer and seller merely. To say the least, it would seem plaintiff below did not believe that the contract created an agency.
But, assuming that this act was not conclusive, and conceding that there is no “magic in words,” still agency can not be said to exist unless the usual tests can be applied. See Mechem, Agency, par. 1; 1 Livermore, Agency, 67; 2 Bouvier, Institutes of Am. Law, 3.
If there could have been any doubt about the true relation created by the contract, when the demurrer was acted upon, certainly all doubt must disappear on reading the testimony of the parties themselves. See the deposition, S. T.‘ Block, Exhibit 113, questions 50 to 55, deposition page 46. Also E. J. Mack, Exhibit 113, questions 34 -to 43.
The distinguishing features of the agent are his “representative character and his derivative authority” (Mechem, Agency, supra). These elements, under the evidence, are entirely lacking. The relation intended to be and actually created must be held to be that of buyer and seller merely, and not that of principal and agent.
The following cases would seem to be decisive: Russell v. McSwegman, 84 N. Y. Supp., 614; Towle v. White, 21 W. L., 465; Vosbury v. Mallory, 75 N. Y. Supp., 480; Roosevelt v. Nusbaum, 77 N. Y. Supp., 457; Tady v. Sterious, L. R, 1 Ch., 354; In re Nevitt, L. R, 6 Ch., 397.
Under the authorities, the restriction can not be upheld as ancillary to such a relation as that contemplated. It will be borne in mind that this is hot a ease of a restriction to protect *402 “good will.” It was purely a case — to borrow tbe language of Judge Minshall — where the Standard Distilling & Distributing Company sought to buy B. & Sons “out of business,” so far as making alcohol and spirits for sale as such was concerned. Lufkin Rule Co. v. Fringeli, supra.
The only other agreement or contract whose purpose the restriction could be said to subserve is the United States Spirits Association agreement. But this contract, on its face, is in contravention of the Valentine law, 93 O. L., 143 (Rev. Stat. 4427-1), and the common and statute law of Kentucky. It, being void because illegal, can not be made the predicate of a valid ancillary contract. ' As I view the contract, therefore, it presents an agreement of B. & Sons, for a certain consideration to be paid by the Standard Distilling & Distributing Company, not to manufacture or produce, for sale as such, alcohol or spirits, for five years, and to buy all their needed alcohol and spirits from the Standard Distilling & Distributing Company. This is in general restraint of trade, and is forbidden by law. By permitting the plaintiff below to recover the amount promised fox-doing that which the law distinctly forbids, the coux-t Avould be placed in the anomalous position of placing a premium on that which the law declares shall not be done.
Even if' this provision in the agreement was bad, can it be severed and eliminated and the good be enforced? This view seems to have obtained when the cause was heard on its merits before a court other than the one that passed on the demurrer. But I axn of opinion that the axxthorities forbid this also. Legal proxnises, it is true, xnay be severed froixx illegal ones; but the legal part of the consideration can not be severed from the illegal part. The good, ex necessitate, falls with the bad. The consideration of the promise of the Staxxdard Distilling & Distributing Compaixy to pay B. & Sons a stipulated monthly sum, had for its basis the promise of B. & Sons not to manufacture ox-produce spirits and alcohol for sale as sixch. To say the least, this was part of the coxxsideration. This promise, being in coxxtravexxtion of law, caix not be made the basis of the couxxtex- promise of the Standard Distilling & Distributing Company. • The *403 legal maxim, “Ex turpi contractu non oritur actio,” applies in all its force. Bishop v. Palmer, 146 Mass., 469; Lange v. Werk, 2 Ohio St., 519; Widoe v. Webb, 20 Ohio St., 431; McQuade v. Rosecrans, 36 Ohio St., 442; Bridge v. Cage, 2 Croke, 103; Douthart v. Congdon, 197 Ill., 349; Filson v. Himes, 5 Pa. St., 452; Foley v. Spier, 100 N. Y., 552; Burke v. Child, 88 U. S., 441.
'Worthington & Strong and Moran, Mayer (& Meyer, for plaintiff in error.
Thornton M. Hinkle, for defendant in error.
For these reasons I am of opinion that the court below erred in overruling the demurrer, and upon the whole case I think the judgment was against the evidence and the law. I think the judgment should be reversed and judgment entered up for plaintiff in error.