PERCY SAYRES, Respondent, *v.* DECKER AUTOMOBILE COMPANY, Appellant.

Fraud — conspiracy to defraud insurance company — fraudulent bill of sale to show insured paid for an automobile destroyed by fire the amount for which it was insured — payment made to president of automobile company to make purchase price same as value stated in policy — when such payment cannot be recovered upon promise of defendant's president after insurance was settled.

1. Where an agreement consists of a single promise based on a single consideration if either the promise or the consideration is illegal the agreement is void and the courts will not enforce it and where the direct object of the parties is to do an illegal act the same rule applies.

2. Plaintiff purchased of defendant an automobile, and representing that he had paid a certain sum, more than the actual price for a car purchased from defendant, he obtained a policy for that amount, loss payable to himself and the defendant. The car having been partially destroyed by fire, proofs of loss were prepared and sworn to by plaintiff in which he stated that he paid a certain sum, the amount stated in the policy, for the car. Defendant's president, at plaintiff's request, gave him a bill of sale showing the purchase price to be that stated in the policy upon the agreement that plaintiff would pay him a certain sum which, with the price paid for the car and some accessories therefor made up the amount of the insurance. Defendant's president promised that when the insurance was settled he would return the money to plaintiff. Having received the fraudulent bill of sale plaintiff turned it over to the insurance company and received part of the policy and the wrecked car which he sold. He thereupon demanded from defendant's president the money he had paid him to get the fraudulent bill of sale but the president refused to repay it and finally turned it over to the insurance company. Plaintiff brings this suit against the automobile company to recover the money, basing the suit upon the promise of defendant's president. Plaintiff, having knowingly entered into a conspiracy to defraud the insurance company, cannot have the aid of the court in completing the fraud or obtaining any of its proceeds.

*Sayres* v. *Decker Automobile Co.*, 206 App. Div. 812, reversed.

(Submitted October 7, 1924; decided November 25, 1924.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 3, 1923, affirming a judgment in favor of plaintiff entered upon a verdict.

*Thomas F. Rogers* for appellant. The transaction is tainted with fraud throughout, and the plaintiff did not come into court with clean hands, and cannot recover. (*Phenix Bridge Co.* v. *Keystone Bridge Co.,* 68 Hun, 607; *Saratoga County Bank* v. *King,* 44 N. Y. 87; *Farley* v. *Woodner,* 71 App. Div. 331; *Taylor* v. *Taylor,* 32 Misc. Rep. 312; *Central New York Tel. & Tel. Co.* v. *Averill,* 58 Misc. Rep. 59; *Sirkin* v. *Fourteenth Street Store,* 124 App. Div. 384; *Barry* v. *Mulhall,* 162 App. Div. 749; *Knowlton* v. *Congress & Empire Spring Co.,* 57 N. Y. 518; *Sprague* v. *Webb,* 168 App. Div. 292; 225 N. Y. 685.)

*James O. Sebring* for respondent. The defendant is not entitled to a reversal on the ground that the turning over of the money to the defendant upon defendant's agreement to return it to the plaintiff was part of an immoral and illegal transaction. (*Duvall* v. *Wellman,* 124 N. Y. 156; *Tracy* v. *Talmade,* 14 N. Y. 81; *Curtiss* v. *Leavitt,* 15 N. Y. 9; *Wheaton* v. *Hubbard,* 20 Johns. 290; *Mount* v. *Waite,* 7 Johns. 434; *Schermerhorn* v. *Talman,* 14 N. Y. 93; *Woodruff* v. *Erie R. R. Co.,* 98 N. Y. 609; *Place* v. *Hayward,* 117 N. Y. 487; *Irwin* v. *Currie,* 171 N. Y. 409; *Spregg* v. *Webb,* 168 App. Div. 292; *Pratt* v. *Short,* 79 N. Y. 437; *U. S. Title Guarantee Co.* v. *Brown,* 166 App. Div. 688; *People* v. *Hawkins,* 156 N. Y. 12.)

ANDREWS, J. In January, 1921, the plaintiff purchased of the defendant a used automobile for $1,300. He paid $800 in cash and gave a note for $500. He then applied to the Springfield Fire and Marine Insurance Company for a policy of insurance representing that he had paid for the car in question $1,765 and obtained a policy for that amount, the loss payable to himself and to the

defendant. He says now that he had added to the price
of the car $465 for improvements. When he comes to
enumerate these additions, however, it becomes evident
that this statement was far too optimistic. On July 22d
in the same year the car was partially destroyed by fire
and a few days later the note for $500 was paid.

At the time plaintiff was nineteen years of age but he
seems to have been engaged in business as some reference
is made to a truck owned by him, and apparently he
was of normal intelligence. As to what occurred when he
attempted to adjust the fire loss we take his own story.
Proofs of loss were prepared and sworn to by him in
which he stated that he had paid $1,765 for the car and
he made a claim for that amount. Accompanying these
proofs of loss was a statement by one Decker, the defend-
ant's president, not sworn to, confirming the plaintiff in
this regard. This is said by Decker to have been signed
by mistake. Thereupon an insurance adjuster called
upon the plaintiff and demanded an original bill of sale.
The plaintiff knew that he could not obtain his insurance
until this bill of sale was secured and he also seems to
have known that if the true facts were stated he might
get nothing. He had been warned by Decker that he
could not collect, as things were, the $1,765. Apparently
too when the note had been paid a bill of sale stating
the price for which the car had been purchased as $1,300
had been given to the plaintiff by the defendant. So
knowing that before he could collect his insurance a bill
of sale was required showing that the purchase price
was in fact $1,765 the plaintiff went to Decker and
asked him to make out a bill of sale for that amount.
Decker at first refused saying that he had only received
$1,300 and he was afraid to sign a false bill of sale. He
finally consented to do so, however, if the plaintiff would
pay him $430. That would make a total of $1,730 and
the balance between that and $1,765 was represented
by certain tires and accessories which the plaintiff had

purchased. Decker promised that as soon as the insurance matter was settled he would return the $430 to the plaintiff.

Matters being so arranged the plaintiff handed to Decker the $430 and received the fraudulent bill of sale. This he turned over to the company and as a result collected on the policy $1,175 and received the wrecked car which he sold, as he finally admits, for $400. He then demanded the $430 of Decker but Decker replied that it did not belong to the plaintiff but to the insurance company and to the company he finally paid it. This action to recover the sum in question resulted based upon the contract of Decker to return it.

It is certain that Decker and the plaintiff entered into a conspiracy to defraud the insurance company. The object of the plaintiff was clear. He had committed perjury in making out his proofs of loss and he must have known that if the insurance company discovered not only this perjury, but the misrepresentation in his application for the policy as to the amount paid for the car, he might receive nothing. Decker's object is perhaps less clear. He himself says that he was actuated purely by altruistic motives believing that if the insurance loss was settled on the basis of what was actually paid for the car and the $430 was returned by him thereafter to the insurance company the result would be equity between the parties. More probably he was actuated by a desire to oblige a customer and by the hope that the plaintiff would purchase from him a new car if he obtained his insurance money. There was at least some talk to that effect.

The court is asked to complete the successful fraud which has so far been perpetrated and to restore the $430 to the plaintiff. Such has been the result in the courts below. The jury was allowed to say and did say that the plaintiff was not engaged consciously and intentionally in an attempt to cheat the insurance com-

pany because of his youth, his ignorance, his lack of experience and the fact that his mind was intent upon getting what he supposed was his own. Upon the evidence before us the jury was entitled to draw no such inference. Consciously, appreciating that he might not recover his insurance if the truth were known, believing that it was necessary for him to get a bill of sale fixing a price high enough to justify the false representations which he had made to the insurance company, he knowingly entered into this conspiracy. He it was who requested Decker to make the fraudulent bill of sale so that he might complete his fraud. Decker was equally guilty but there is no evidence from which the inference can be drawn that his was the directing mind and that the plaintiff simply yielded to his persuasion. As one of the plaintiff's witnesses says in relating a demand for the return of this money, " I told him I thought they were both up against it a little."

We have, therefore, the payment of money in consideration of the undertaking of Decker to join the plaintiff in an attempt to defraud the insurance company and on the promise of Decker to return the money when the fraud has succeeded. Where an agreement consists of a single promise based on a single consideration if either the promise or the consideration is illegal the agreement is void and the courts will not enforce it. Where the direct object of the parties is to do an illegal act the same rule applies. (*Hull* v. *Ruggles*, 56 N. Y. 424; *Woodworth* v. *Bennett*, 43 N. Y. 273; *Duval* v. *Wellman*, 124 N. Y. 156; *Sirkin* v. *Fourteenth Street Store*, 124 App. Div. 384.)

The judgments appealed from should be reversed and the complaint dismissed, with costs to the defendant in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN, CRANE and LEHMAN, JJ., concur.

Judgments reversed, etc.