M. J. TWIEHAUS and DOROTHY TWIEIIAUS; Plaintiffs-Appellants, v. LEONARD ROSNER and CLARA ROSNER, Defendants-Appellants, No. 42379—245 S. W. (2d) 107.

Division One, January 14, 1952.

950

*B. H. Dyer* for plaintiffs-appellants.

*Robert V. Niedner, Paul F. Niedner* and *Niedner & Niedner* for defendants.

COIL, C.—Appeal from judgment awarding plaintiffs-appellants specific performance of an option to purchase contract and providing, in event of failure to convey the property involved, that title be divested out of defendants-appellants and vested in plaintiffs-appellants; and denying defendants-appellants damages sought by their counterclaim for alleged wrongful holding over by plaintiffs. All parties have appealed. We shall refer to them as plaintiffs and defendants.

On June 28, 1947, plaintiffs, husband and wife, lessees, and defendants, husband and wife, lessors, entered into what they termed a "rental and option" contract providing for occupancy by lessees on July 7, 1947. A provision gave plaintiffs-lessees an option to purchase the property within a certain time (the length of time is in dispute) for $8,000, less certain credits depending upon the then status of defendants-lessors' title, and less a credit of either $40 per month for each month the premises had been occupied and rent paid therefor, or a total credit in the amount of $40 per month for twelve months (depending upon the construction given the language used).

Plaintiffs contend that they properly exercised their option and are entitled to the property. Defendants' contention, among others, is that the contract was and is illegal and not enforceable.

The trial court determined that the "rental and option" contract was not ambiguous; that plaintiffs had effectively exercised the option to purchase; and that the "Federal Rent Control Act" had "no effect in the determination of the issues in this cause for the reason the Act in purpose and context has nothing to do with an action for specific performance to convey a plot of ground as is at bar.".

Ordinarily, the issues on this appeal would make necessary a construction of the language used, a determination of whether plaintiffs made a valid tender under the contract so construed, and decision as to other matters having to do with the respective contentions and asserted rights of the parties. In the view we take, however, it will be unnecessary to consider these matters and consequently unnecessary to set forth the "rental and option" contract. For our purposes, it is sufficient to state that it is undisputed: that the contract was signed June 28, 1947 by the defendants as lessors and by plaintiffs as lessees; that the contract was to be effective July 7, 1947; that it provided for payment by lessees to lessors of the sum of $60 per month for rent; and that it contained language which purported to give to lessees an option to purchase for the sum of $8,000, subject to certain credits on the purchase price based upon the months during which the property had been occupied by lessees and $60 monthly rental paid.

Whatever the proper construction of the contract may be, it is clear that the sole consideration for the entire contract, i. e., for the leasing and rental of the premises as well as for the option to purchase, was the payment by lessees to lessors of the sum of $60 per month as and for rent.

 At the time of the execution of the contract, June 28, 1947, there was in effect the Emergency Price Control Act of 1942 as extended and amended. 50 USCA, App., §§ 901-924. Certain regulations were issued thereunder. Those in effect on June 28, 1947, appear in 11 F. R. 12055-12074. On June 30, 1947, the Housing and Rent Act of 1947 was enacted, effective July 1, 1947. 61 Stat. (Part 1) 193; U. S. Code, Cong. Serv., 80th Cong., 1st Sess. 1947, pp. 200-208 (as originally enacted). For Act as amended, see 50 USCA, App., §§ 1881-1910. Regulations were issued on July 1, 1947 by the housing expediter as provided for in the Act. 12 F. R. 4331-4348. The Housing and Rent Act of 1947 repealed the Emergency Price Control Act of 1942 but generally, as to designated areas, the regulations pertaining to rent under the Price Control Act remained in effect. Under the provisions of both the Emergency Price Control Act of 1942 as extended and amended and the regulations issued thereunder, and the Housing and Rent Act of 1947 and the regulations thereunder, maximum rent to be paid for controlled housing accommodations was

952

established. (The 1942 and the 1947 laws mentioned will sometimes be referred to as the rent Acts). A main purpose of both rent Acts was to prevent inflation; a purpose of the 1947 Act was to provide for the achievement of a reasonable stability in the general level of rents during the transition period, that is, the period between the partial elimination of federal restrictions on rents and the time when Congress would totally eliminate these federal restrictions. 50 USCA App., §§ 901, 1891(a), (b).

We have referred to both the Emergency Price Control Act of 1942 as extended and amended, in effect on July 28, 1947, the date of execution of this contract, and to the Housing and Rent Act of 1947, in effect three days subsequent to the execution of, and prior to the effective date of, the contract. This, to demonstrate that it is unimportant whether the 1942 Act and the regulations thereunder, or the 1947 Act and subsequent regulations, here apply. Under both rent Acts and their respective pursuant regulations, the premises constituted controlled housing accommodations. Under both Acts the County of St. Charles, wherein this property is located, was designated a defense rental area with a "maximum rent date" of March 1, 1942 and an "effective date of regulation" of July 1, 1942, 11 F. R. 12069(174); 12 F. R. 4342 (174); and the maximum rent to be charged or received for the accommodations was fixed by the provisions of the regulations.

■ Neither of the rent Acts nor any of the regulations issued pursuant to them were introduced in evidence. However, these Acts and regulations are judicially noticeable. Hall v. Bucher, 240 Mo. App. 1239, 1242, 227 S. W. 2d 96, 98[3].

■ The parties are charged with knowledge of the existing law at the time they entered into the contract and at the time it was to become operative by its terms. Hall v. Bucher, supra, 227 S. W. 2d 98[2]. We note, however, that the evidence shows that at least plaintiff-husband and defendant-husband had actual knowledge of the applicability of existing law pertaining to maximum rents to the premises involved, and knowledge that the maximum rent prescribed was the sum of $50 per month. And the conclusion is compelled by the record that these parties possessed this knowledge at the time the contract was executed and at all times subsequent thereto. The evidence further showed that while the premises had been rented prior to the ownership of defendants-lessors, nothing was thereafter done to comply with the effective law.

■ The 1942 Act, 50 USCA, App., § 904 (1944 Ed.), provided in part: " (a) It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, * * * to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2 [section 902 of this Ap-

pendix], \* \* \* ▮▮▮ or to offer, solicit, attempt, or agree to do any of the foregoing.''

Section 206a of the Housing and Rent Act of 1947, 61 Stat. (Part 1) 199; U. S. Code, Cong. Serv., 80th Cong., 1st Sess. 1947, p. 206, provided: ''(a) It shall be unlawful for any person to offer, solicit, demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations in excess of the maximum rent prescribed under section 204.''

The regulations here noted were for all practicable purposes the same on June 28, 1947 and July 7, 1947. The differences are noted hereinafter. § 825.10, Sec. 2(b) 12 F. R. 4332 provided in part: ''Lease with option to buy. \* \* \* Where a lease of housing accommodations has been entered into on or after the effective date of regulation (or on or after October 20, 1942, where the effective date of regulation is prior to that date), and the tenant as a part of such lease or in connection therewith has been granted an option to buy the housing accommodations which are the subject of the lease, the landlord, prior to the exercise by the tenant of the option to buy, shall not demand or receive nor shall the tenant offer payments in excess of the maximum rent, whether or not such lease allocates some portion or portions of the periodic payments therein provided as payment on or for the option to buy.'' (The foregoing is a portion of an applicable regulation effective July 1, 1947, issued under the 1947 Act. The corresponding portion of the regulation in effect on June 28, 1947 is the same as the above quoted portion except that the words ''nor shall the tenant offer'' are not contained in the prior regulation. 11 F. R. 12055, 12056, § 1388.1181, Sec. 2(c)).

Another regulation in effect under both Acts is in part as follows: ''Regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, no person shall offer, demand or receive any rent for or in connection with the use or occupancy on and after the effective date of this regulation of any housing accommodations within the Defense-Rental Area higher than the maximum rents provided by this regulation; and no person shall offer, solicit, attempt, or agree to do any of the foregoing.'' 12 F. R. 4332, § 825.10, Sec. 2(a). (The foregoing quotation is a portion of the regulation under the 1947 Act. The only difference in the regulation in effect on June 28, 1947 under the 1942 Act is the omission of the word ''offer'' in the second line of the foregoing quotation. 11 F. R. § 1388.1811, Sec. 2(a)).

§ 825.110, Sec. 8(a), 12 F. R. 4337 (1947 regulation) and § 1388.-1811, Sec. 9(a), 11 F. R. 12064 (1942 regulation) provided: ''The maximum rents and other requirements provided in this regulation shall not be evaded, either directly.or indirectly, in connection with the renting or leasing or the transfer of a lease of housing accommodations, by way of absolute or conditional sale, sale with pur-

chase money or other form of mortgage,· or sale with option to re-purchase or by modification of the practices relating to payment of commissions or other charges or by .modification of the services furnished with housing, or by tying agreement, or otherwise."

Clearly, plaintiffs and defendants, by executing the contract, agreed to do that which was prohibited by the express provisions of the quoted portions of the rent Acts and regulations thereunder. The consideration for the option to purchase was a payment of rent in excess of the maximum lawful rent in direct violation of the existing statutes and regulations. All parties to the contract aided and assisted in the violation of the provisions of the controlling Act.

It is well settled that a contract based upon an illegal consideration and thus in violation of law cannot be enforced ·either at law or in equity. Hall v. Bucher, 240 Mo. App. 1239, 1242, 227 S. W. 2d 96, 98[2], and cases there cited; Pomeroy's Eq. Juris., 5th Ed., Vol. 3. § 940, p. 728 et seq.; 17 C. J. S., Contracts, § 189, p. 544; Kansas City Granite & Monument Co. v. Jordan, 316 Mo. 1118, 1134, 295 S. W. 763, 768(1st col.). This general rule is applicable to the contract here and prevents relief to either of the parties.

Two exceptions to this general rule should be noticed. One is stated in Restatement, Contracts, Vol. II, § 601, p. 1116, as follows: "If refusal to enforce or to rescind an illegal bargain would produce a harmful effect on parties for whose protection the law making the bargain illegal exists, enforcement or rescission, whichever is appropriate, is allowed." See also: Pomeroy's Eq. Juris., 5th Ed., Vol. 3, § 942(c). The same exception is stated in Williston on Contracts [Rev. Ed.], Vol. VI, § 1789, p. 5086, as follows: "The nature or terms of a statute or rule of law will also sometimes indicate that it is intended for the protection of one class of individuals against another, and where this is the case the party belonging to the class whose protection was intended may recover what he has paid."

Both rent Acts provided for recovery by the tenant from the landlord of penalties or treble damages. 50 USCA, App., § 925(e); § 205 Housing and Rent Act of 1947, 61 Stat. (Part 1) 199; U. S. Code, Cong. Serv., 80th Cong., 1st Sess. 1947, p. 206.

While a declared purpose of each of the rent Acts was to prevent inflation, the Acts may nevertheless be said to benefit the tenant in that the only penalty provided for violation was against the landlord. It has been held that the rent Acts make the landlord the only offender and that the tenant under the provisions of the Acts commits or committed no wrong when he pays or has paid rent in excess of the maximum established. But it is also ˙said that restitution of the excess rent to the tenant, or to the government as a penalty in the event the tenant fails to sue, is not primarily for the benefit of the tenant but rather to discourage violations of the Acts in order to obviate the inflationary effect of a contract or an agreement for, or the paying of,

rent in excess of the maximum fixed. See Ebeling v. Woods, 8 Cir., 175 F. 2d 242, 245[5], where the court said: "Appellant's final contention is that the court should have denied restitution under the doctrine of pari delicto. The argument is that it was as wrong for the tenant to pay the $500 bonus as it was for the landlord to accept it, and that the Administrator therefore ought not to be permitted to seek a restitution for the tenant's benefit. But this ignores both the concept underlying the Act and its plain provisions. Under 50 U.S.C.A. Appendix, § 904(a), the duty to avoid overcharges under the Act is the responsibility of the landlord and not the tenant. The landlord alone, because of his superior position generally in the housing-shortage situation was made the offender under the Act. Congress regarded a tenant, who paid more than the authorized rental for a housing accommodation, as having committed no wrong. Cf. Zwang & Bowles v. A. & P. Food Stores, 181 Misc. 375, 46 N. Y. S. 2d 747. Whether the excess rent was willingly or unwillingly paid, the statute prohibited the landlord from accepting it and provided for its recovery from him. Furthermore, the object of the Administrator in seeking restitution is not primarily to benefit the tenant but to discourage violations of the Act and in the public interest to dissipate the inflationary effect of what the parties have done. For a court of equity, under this concept of the statute, to refuse to grant an order of restitution for a rent overcharge, on the doctrine of pari delicto, would be a subversion of the moral and legal content of the Act." To the same effect, see Zwang v. A. & P. Food Stores, 181 Misc. 375, 46 N. Y. S. 2d 747, dealing with a violation of the Emergency Price Control Act in respect to its provisions as to ceiling prices. And see Rosenberg v. Hano, 3 Cir., 121 F. 2d 818, dealing with the enforcement of civil liability under the Securities Exchange Act of 1934, which Act, like the rent Acts, specifically authorized one party to an illegal agreement to sue. See also: Elmers v. Shapiro, Cal., 205 P. 2d 1052, 1060; and Comment Note, 120 A. L. R. 1461-1465.

It is apparent that the application of the principle that where a statute makes one party to an illegal contract the offender and fails to make the other party to the illegal contract an offender but, on the contrary, gives such other party the right to rescind the contract or recover the money or property paid or conveyed, treats the parties as being not in pari delicto, and thus is an exception to the general rule stated supra.

It is also apparent, however, that this exception is not applicable to factual situations like that in this case. We are not here dealing with facts where the question is the enforceability either at law or in equity of the right of a tenant or lessee to recover rent paid in excess of the maximum rent established by the Act. Nor are we concerned here with an equitable proceeding wherein the purpose is to set aside or rescind a transaction under which excess rents have been paid. On

the contrary, the facts here disclose that plaintiffs-lessees seek to enforce in equity by specific performance an independent right claimed to have accrued under the provisions of a contract based upon an illegal consideration. Recovery may be had only by the affirmative enforcement of the provsions of an unlawful contract. The claimed right of lessees in this case is not asserted to recover under the penalty provisions of the rent Acts or, in other words, to place the parties in the same respective positions which they occupied before the contract was executed or partially performed. On the contrary, a decree of specific performance in this case would enforce an independent right (one other than rescission or restoration) which could spring only from the illegal transaction. Whether such right exists is not dependent upon who is the offender and who is not the offender under a statute.

The fact is, the parties entered into a contract made unlawful by the provisions of the rent Acts. Plaintiffs-lessees' right to have restored to them the money paid by them in excess rents is not involved. In final analysis, what the parties to this contract did was to agree to the leasing and possible sale of property in a manner specifically prohibited by law. They made the agreement despite the law and, in effect, agreed "to set the law aside." The factual situation here calls for application of the principle stated in U. S. v. Steagall, U. S. Dist. Ct. N. D. Texas, Ft. Worth Div., 88 F. Supp. 98, wherein the United States brought an action under the Housing and Rent Act of 1947 against a landlord to compel restitution to various tenants who had been charged excess rentals. The evidence showed that the landlord, after the action by the United States was instituted, compromised his liability for excess rents with various tenants and set up the compromise agreements as a defense in the action by the government. The court at page 104, 88 F. Supp., said: "Ordinarily, when men contract, they have the right to do so. Ordinarily, when men have a controversy, the law looks with favor upon the parties settling that lawsuit. But, where the law imposes a limitation on a landlord, and says he must not charge more rent than a certain ceiling price, and he and the tenant get off and fix a writing, so that he can charge more than the ceiling price, he and the tenant are collaborating together to set the law aside, and that act is against public policy, and no contract that they make to set the law aside will be enforced."

Haussman v. Rowland, 183 Misc. 654, 53 N. Y. S. 2d 440, was an action for the specific performance of a contract to sell real property. Whether the contract would be enforced depended upon whether the tenant occupying the property was bound to vacate under the terms of a lease. The court at page 441 said: "On the point in dispute the court finds that the landlord offered and the tenant accepted an oral lease for a year conditioned on the tenant's procuring and paying for such work as was needed; that the condition involving what was in

substance an increased rent was illegal under Office of Price Administration regulations and the attempted leasing, resting on an illegal consideration, impossible to apportion as to the promises made and accepted, must fail. 6 Williston on Contracts [rev. ed.], § 1780; Sayres v. Decker Automobile Co., 239 N. Y. 73, 77; 145 N. E. 744, 745; Foley et al. v. Speir et al., 100 N. Y. 552, 558, 3 N. E. 477, 480.

"This left the parties in the position in which they would have been without such illegal agreement." See also Barnsdall v. Owen, 8 Cir., 200 F. 519; and Blaine v. Blaine, Tex., 207 S. W. 2d 989, 994 [9-12].

A case in this state dealing with facts similar to those here involved is Hall v. ▉ Bucher, supra. There plaintiff agreed to sell and sold to defendant certain corn at an agreed price; such agreed price was to be the highest ceiling price in that locality between March 12 and July 15, 1946. At the date of sale, the ceiling price was $1.08 per bushel. The highest ceiling price during the agreed period was $1.33-⅓ per bushel. Plaintiff sued for an alleged balance due him for the price of corn delivered under and pursuant to their agreement. The Kansas City Court of Appeals held that the agreement was in violation of the Emergency Price Control Act and of regulations issued thereunder. The provisions with reference to prices are in the same section of the Act as are certain of the provisions with reference to rent heretofore quoted supra. 50 USCA App. § 904(a). A regulation provided that: "Any person may agree to sell at a price which can be increased up to the maximum price in effect at the time of delivery; but no person may, unless authorized by the Office of Price Administration, deliver or agree to deliver at prices to be adjusted upward in accordance with action taken by the Office of Price Administration after delivery." In holding that neither party could recover upon the contract, the court, at page 98, said: "Defendants contend that the contract sued on and proved violates the last quoted regulation because the price of the corn was to be adjusted upward in accordance with action taken by the OPA *after delivery*. We think this contention must be sustained.

"Sec. 904(a), supra, clearly provides that it shall be unlawful for any person to sell or deliver any commodity in violation of any regulation or order or any price schedule adopted and published by the Administrator of the Office of Price Administration. The regulation last above quoted is clear and unambiguous and prohibits any person, unless authorized by the Administrator, to *deliver, or agree to deliver*, any commodity with the understanding that the price for such commodity is to be adjusted in accordance with any action taken by the Administrator *after delivery* of such commodity. That is precisely what the plaintiff and the defendants agreed to do and, for that reason, the contract is illegal and neither party can enforce it.

"The rule is, under both the Federal and State authorities, that where parties who are charged with knowledge of the law undertake to

enter into a contract in violation thereof, they will be left in the position in which they put themselves. The courts will not permit a recovery to either side. Morgan Ice Co. v. Barfield et al., Tex. Civ. App., 190 S. W. 2d 847; Donovan v. Kansas City, 352 Mo. 430, 175 S. W. 2d 874, 179 S. W. 2d 108; Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S. W. 2d 975; 7 Missouri Digest, Contracts, Key 138(1). (There are certain exceptions to this general rule but they are not applicable here.)."

Another exception to the general rule that equity or law will refuse to enforce an illegal contract should be noted. Where parties to a contract are not *in pari delicto* (and even sometimes where they are *in pari delicto*) and a consideration of public policy makes it more equitable to enforce the contract than to refuse relief, courts of law and equity will under such circumstances afford relief. For a general statement of the principle, see Pomeroy's Eq. Juris., Vol. 2, § 403, p. 136 et seq.; and Vol. 3, § 941, p. 733 et seq. § 1762 of Williston on Contracts, Vol. VI, p. 5001, states: "In some instances, however, a sound public policy may demand either the enforcement of an executory illegal bargain, or the rescission of an executed one, when a denial of such relief by the courts would work a forfeiture disproportionate to the social interest supporting the public policy, or result in harm to those for whose protection such bargains are declared illegal." See also Sec. 1764, Williston, supra.

See Gardine v. Cottey, 360 Mo. 681, 696, 230 S. W. 2d 731, 740, for a recognition and application of this exception to the general rule by this court. It will be noted that the parties in the last cited case were not *in pari delicto* and that the relief granted in effect restored the ▉ parties to their original positions. The relief granted did not involve the enforcement of an independent right which plaintiff claimed sprung from the illegal agreement, i. e., a right independent of rescission or restoration.

In Ebeling v. Fred J. Swaine Mfg. Co., 357 Mo. 549, 209 S. W. 2d 892, plaintiff sued for commissions allegedly due under a contract with defendant whereby it was agreed that defendant would pay plaintiff five per cent commission on gross returns for procuring for defendant subcontracts from prime contractors with the government. Defend-- ant's answer averred that a certain effective order, issued pursuant to the federal War Powers Act, 54 Stat. 712, 875, 50 USCA App. 1171, required that every such contract contain a warranty that it had not been secured or solicited for a commission by any person other than a bona fide established commission or selling agency maintained by the contractor for the purpose of obtaining business; and providing further that upon breach of the warranty, the government should have the right to annul the contract or to deduct the wrongful com-

mission. Defendant contended that the commission contract with plaintiff was void and illegal. It was said at 209 S. W. 2d 895[6]: "Sometimes courts will inquire how far and for what reason a transaction is prohibited as wrongful; and whether the loss to the party in delicto will exceed the requirements of public policy. 6 Williston on Contracts (Rev. Ed.) p. 5006, § 1784; p. 5085-6, § 1789. See also Shulkin v. Shulkin, 301 Mass. 184, 16 N. E. 2d 644, 118 ALR 629, 640, note." Under the facts in evidence in that case plaintiff was permitted to recover the commissions earned. This result was based partially upon the proposition that to prohibit recovery would exceed the requirements of public policy. See Witmer v. Nichols, 320 Mo. 665, 8 S. W. 2d 63, and Hobbs v. Boatright, 195 Mo. 693, 724, 93 S. W. 934, 938, for other applications of this exception to the general rule. See also Case Note 1 LRA n. s. 1032.

Diligent search fails to disclose a case in which affirmative equitable relief has been granted to a party to a contract resting on an illegal consideration, except when the equitable relief was for the purpose of restoring to one of the parties the money or other property parted with as a result of the illegal transaction, or where public convenience demanded affirmative equitable relief as in Seattle Electric Co. v. Snoqualmie Falls Power Co., 40 Wash. 380, 82 Pac. 713, 1 LRA (N. S.) 1032.

Sometimes cases may arise wherein considerations of public convenience or motives of wise public policy will cause a court of equity to affirmatively enforce an independent right (i. e., other than rescission or restoration) which is based upon and springs from a contract supported by a consideration prohibited by law. The case before us is not such a case. Public policy does not require intervention of equity to enforce this option contract. Failure to enforce it does not exceed the requirements of public policy. The very purpose of the provisions of the law was circumvented, evaded, and nullified by the agreement. of these parties. Equity should not lend its aid in these circumstances to the enforcement of an alleged right claimed by virtue of, and which can exist only by virtue of, the terms of an unlawful contract.

Our holding herein makes it unnecessary to consider defendants' counterclaim seeking damages for unlawful holding over by plaintiffs. The same reasons which cause denial of relief to plaintiffs prevent any relief in this action to defendants. What the present status of the parties may be in their landlord-tenant relationship, viewed in the light of the provisions of the Housing and Rent Act of 1947 as amended, and the regulations pursuant thereto, is of no concern here. We leave the parties where we find them.

The judgment and decree herein is reversed. The costs on this appeal are assessed one-half against plaintiffs and one-half against defendants. The case is remanded to the trial court with directions to

960

dismiss plaintiffs' bill, to dismiss defendants' counterclaim, and to assess the costs ██ one-half against plaintiffs and one-half against defendants. *Van Osdol* and *Lozier, CC.*, concur.

PER CURIAM:—The foregoing opinion by Coil, C., is adopted as the opinion of the court. All the judges concur.