Verlin K. **LESTER**, Plaintiff-Respondent,

v.

**DAVIDOW'S DECOR, INC.,** Defendant-Appellant.

No. KCD 26840.

Missouri Court of Appeals,
Kansas City District.

March 31, 1975.

Thomas R. Slaughter, Shockley, Reid & Koger, Kansas City, for defendant-appellant.

William F. Mauer, Kansas City, for plaintiff-respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Action for damages for return of purchase price for allegedly nondelivered goods. On trial to court, judgment was for plaintiff, $3277.84 damages and interest of $991.97.

Plaintiff-respondent, Verlin K. Lester, and Lareita Boyer were planning to marry. On April 26, 1968, they went to Davidow's, a furniture and interior decorating store owned and operated by defendant-appellant, Davidow's Decor, Inc., in North Kansas

City. There they selected numerous items of furniture for purchase at a price of $2656.73. The sales person prepared a sales ticket in the name of Verlin Lester, with the address shown as 2409 N.E. 53rd St., Kansas City. The sales ticket was marked "Hold."

A Security Agreement was also prepared, showing Lester as the buyer and the 53rd Street address. The items purchased were listed in the agreement with a time payment price of $3307.15, payable in 36 monthly installments of $80.72, except that the last payment was to be $81.95. The agreement was signed by Lester and also Ms. Boyer, each as "Buyer." It was signed on behalf of Davidow's and bore the date "5–15–68." It is not clear just when and by whom this date was inserted. The Security Agreement was intended to be assigned to General Electric Credit Corporation and there was evidence that the practice was not to date the agreement until General Electric Credit Corporation had checked the transaction and agreed to accept the assignment.

On May 9, 1968, Davidow's delivered the furniture to 1413 Elmwood, Lawrence, Kansas. In response to interrogatories, Davidow's stated that its employee, Donna Rawls, took instructions from Lester to deliver the goods to that address. On her deposition, Ms. Rawls stated that she could not remember being told by Lester to make the delivery to the Kansas address. The delivery ticket bears the signature of Lareita Boyer. There is a notation on the ticket "COD $32.00 Irene O.K. to leave." This meant that the sales person who handled the transaction approved delivery of the order, whether or not the COD charge was paid.

According to Lester, sometime after the purchase had been made and before he made the first payment on the time contract, he was asked to come to Davidow's and sign a new Security Agreement because the time charge had been erroneously figured on the first. He went to the store

and signed a new agreement calling for a time sale price of $3277.84, payable in 36 monthly installments of $79.94. No request was made to Ms. Boyer to join in the new agreement. The new agreement was assigned to General Electric Credit Corporation. A duplicate original offered in evidence at the trial bore the signature of Lester alone as buyer. No date appeared on the document.

According to Lester, when he signed the second agreement, he did not know that the furniture had been delivered. He first learned of the delivery sometime after June 1, when he stopped at Davidow's to make the first payment on the installment contract. At that time Davidow's demanded a $50 delivery charge. That was his first knowledge that the furniture had been delivered. The plans of Lester and Ms. Boyer to marry had fallen through and at the time of his learning of the delivery the two were not speaking to each other. Lester never did talk to Ms. Boyer about the delivery of the goods.

When Lester objected to the delivery charge, Davidow's dropped that item but it could not cancel the note inasmuch as it had been assigned to General Electric Credit Corporation. Lester asked General Electric Credit Corporation to cancel the note or put Ms. Boyer's name on it. They said they could not do this. Acting on the advice of his attorney, Lester paid the installments as they came due and then brought this lawsuit.

Lester's case was based upon his testimony, coupled with the admission of the Davidow employee who supposedly received direction from Lester for the delivery that she could not recall having done so. Lester was admittedly vague about the date of the various transactions and events. He stated that the second agreement could have been signed after May 15.

For the defendant, Donna Rawls, Davidow's bookkeeper who handled credit transactions, testified that, after the delivery of the furniture on May 9, she sent the first Security Agreement to General Electric Credit Corporation, but it was returned for correction. She called Lester and asked him to come in and sign the new agreement. She did not recall whether she said anything about having Ms. Boyer sign the new agreement. She couldn't recall whether she was present when the second agreement was signed.

Julia Slavin, a former employee of Davidow, testified that she received several payments on the contract from Lester and that he never complained about the delivery of the goods and complained about the delivery charge only after he had made several payments. According to the witness, Lester was told of the delivery charge before discussion of the second agreement, and therefore knew that the goods had been delivered before he signed the second agreement.

The defendant presented no direct evidence of the origin of the direction which resulted in the May 9, delivery.

The trial court made a general finding in favor of plaintiff. In the absence of specific findings, the fact issues presented to the trial court must "be considered as having been found in accordance with the result reached." Rule 73.01, subd. 1(b), V.A.M.R. On this appeal, this court reviews the matter on both the law and the evidence "as in suits of an equitable nature," giving "due regard * * * to the opportunity of the trial court to have judged the credibility of witnesses." Rule 73.01, subd. 3(a) and (b).

Applying these rules, it seems obvious that the trial court resolved the conflict in the evidence over when Lester learned of the delivery of the furniture in favor of Lester's version, i. e., sometime after the second Security Agreement was signed. Otherwise, he would, by signing the second agreement with knowledge of what had occurred, have been deemed to have assented to the delivery which had been made.

Appellant does not ask that this factual determination by the trial court be rejected

here. Its contention is that, at the time of the delivery of the goods, Lester and Ms. Boyer had obligated themselves jointly as purchasers under a complete contract, evidenced by the Security Agreement signed by both of them, and that the delivery arrangement which had been left open could thereafter be directed by either of the joint purchasers and delivery to either of them at the direction of either was a valid delivery and caused the contract to have been fully executed by appellant, leaving the second agreement only a modification of the first for the benefit of respondent.

██ Appellant relies on the case of Adler v. Wagner, 47 Mo.App. 25 (1891) as holding that delivery to either of joint purchasers is sufficient as delivery to both. That case does state that principle but the delivery there was in accordance with the directions made at the time the order was placed. The case does not hold that when there are joint purchasers, one of them has the right to·give delivery instructions to the exclusion of his joint purchaser. The rule relied upon by appellant applies only when delivery to one of the joint purchasers was by authority of the other. Cady v. Shepherd, 11 Pick. (28 Mass.) 400, 409 (1831).

More importantly, in this case there was evidence from which the trial court could have concluded that the "Hold" request here made was not a request which left open the delivery directions, but was one which left such directions to respondent. Note the following in respondent's testimony:

"Q. Did you, in fact, tell them the furniture should not be delivered but should be held?

"A. Should be held until I gave them—

"Q. Was this fact noted on their sales ticket to hold delivery?

"A. Yes, it was.

"Q. Now, the reason you did this, where were you living at the time of the second contract?

"A. I was living at 102 Northwest 63rd Street.

"Q. Your mother was living there with you, was she not?

"A. Yes, she was.

"Q. Who owns the furniture in the apartment?

"A. My mother.

"Q. What was your mother planning on doing at that time?

"A. She was going to move back to St. Joe after we were married.

"Q. So you didn't want the other furniture out there until she had moved out, right?

"A. Right.

"Q. At the time it was noted on the sales ticket that you told them to hold delivery, didn't you?

"A. Yes, sir."

The documentary evidence is consistent with the idea that the delivery was to be at respondent's direction. Only his name and address appear on the sales tickets. His name and address are shown on the heading of the Security Agreement opposite "Address of Buyer." Ms. Boyer's name appears only where she signed as "Buyer." Respondent testified that Ms. Boyer "went in with me to buy it and she signed the contract, they requested that she sign it and she did sign it. * * * It didn't enter my mind [that the contract would be binding on her], I was the principal signer of it." Even the delivery ticket is in the name of respondent, although the Lawrence address then appears for the first time. Further consistent with this entire course of dealing is the fact that when the second Security Agreement was signed, appellant sought and obtained only the signature of respondent.

No one testified on behalf of appellant as to what the understanding of the parties to the contract was with respect to the de-

livery. The sales person who handled the sale and wrote up the sales ticket, including the "Hold", was still employed by appellant at the time of the trial, but she did not testify.

 In the circumstances of this case the trial court could and presumably did find that the delivery was not in accord with the understanding of the parties at the time of the sale and did not constitute performance of the contract by appellant. Therefore, the judgment as to the principal amount is affirmed.

Appellant complains that the interest allowed by the trial court was excessive. At the start of the trial, respondent was permitted to amend the prayer of his petition to include a request for judgment for interest at the rate of 6% from the date of the contract. The sum of $991.97 awarded respondent is apparently responsive to that prayer. Appellant contends that the right to interest must depend upon the amount paid and demand for its return. Appellant contends that there was no evidence as to the time of the payments made by respondent and that the earliest demand would have been when the petition was amended to ask for interest.

"Interest on a refund of purchase money to which a purchaser has become entitled because of a seller's failure to perform should be computed from the time of its payment." 67 Am.Jur.2d Sales, § 669, p. 868 (1973). See Miller v. Andy Burger Motors, Inc., 370 S.W.2d 654, 660[7] (Mo. App.1963). Respondent does not attempt to justify his claim for interest from the date of the contract, but does say that he is entitled to interest from the date of the breach, which occurred upon the nondelivery of the goods purchased. However, this is not an action for damages for breach, but for restitution of the purchase price, and the rule relied upon by respondent (see Prudential Ins. Co. of America v. Goldsmith, 239 Mo.App. 188, 192 S.W.2d 1, 3[2–5]) is not here applicable.

There was no evidence as to the course of the payments by respondent in this case. Absent such evidence, the earliest date at which interest should have been computed was the date of filing suit. That date does not appear in the transcript here so a remand will be necessary on this issue. Upon such remand, respondent, if he chooses, should be permitted to produce evidence of the actual payments made by him and have the interest computed accordingly. Otherwise, interest should be computed only from the date of filing suit.

Judgment affirmed in part; reversed and remanded in part.

All concur.