INTERSTATE AGRI SERVICES, INC., Carol Ann Gorman, David Gorman, Kathleen Gorman, Leigh Ann Davenport, Robin Renee Beachner, John Bruce Vanderhoof, and Donna L. Vanderhoof, Appellants–Respondents,

v.

BANK MIDWEST, N.A., Respondent–Appellant.

Nos. WD 54821, WD 54879.

Missouri Court of Appeals,
Western District.

Dec. 22, 1998.

Mindy Morse, Kansas City, for Apellants/Respondents.

Philip Wayne Bledsoe, Kansas City, for Respondent/Appellant.

FOREST W. HANNA, Judge.

Interstate Agri Services and certain individual investors brought suit against Bank Midwest to declare a contingent interest provision in the bank's promissory notes unenforceable, and for the return of their money. The bank responded with a counterclaim for unjust enrichment. The plaintiffs filed a motion for partial summary judgment on liability and for actual damages. The trial court sustained the plaintiffs' motion and entered judgment against the bank for damages in an amount equal to the contingent interest that each plaintiff had paid. The case proceeded to trial before the court on the plaintiffs'

claim for punitive damages, and on the bank's counterclaim for unjust enrichment. The trial court denied both parties' claims. The bank appeals the court's decision regarding the bank's counterclaim for a set-off claiming unjust enrichment. The plaintiffs have not appealed the trial court's denial of their punitive damage claim. The plaintiffs have appealed the trial court's denial of their motion to amend their petition to assert a claim for fraud. We hold that the plaintiffs have a valid action against the bank, which is not defeated by the bank's claim that the offending interest charges were related to the profitability of the plaintiffs' business.

The bank initially challenges the trial court's ruling on the plaintiffs' summary judgment motion awarding damages in the amount of the contingent interest. The bank contends that the promissory notes were fully performed transactions and cannot now be reopened. The bank also argues that unlike the contingent interest provision in *Killion v. Midwest,* the contingent interest in the present case did not violate banking regulations because the contingency related to the profitability of the business entity.[1] The bank also argues that because its mistake regarding the contingent interest was one of law, not fact, restitution should not be allowed. Next, the bank contends that the court erred in denying its claim for unjust enrichment because the bank gave plaintiffs a below-the-market rate of interest. Accordingly, the bank should have been allowed a set-off for the difference between the rate actually charged and the prevailing rate. The plaintiffs single point claims that the trial court erred in denying its motion for leave to amend.

In 1986, Interstate Agri got into the business of managing farms funded by the United States Department of Agriculture's Conservation Reserve Program (CRP). The farm economy and the value of farmland had declined substantially, thus the conservation program was initiated by the government to help raise the price of farmland and farm commodities. One of Interstate Agri's owners, David Davenport, learned about the program. Mr. Davenport believed that CRP farms would be a good investment and purchased, in Interstate Agri's name, four or five properties that were eligible for government payments under the program. Mr. Davenport convinced his family and friends to purchase eligible properties and to retain Interstate Agri to manage the farms for a management fee. The plaintiffs in this lawsuit are among those who purchased the 20–25 properties that Davenport arranged.

Davenport learned that the Dickinson Financial Group owned a number of banks that had a loan program specifically designed for farms eligible for the CRP program.[2] The loan program was designed to provide 100 percent financing for the purchase of the farms. The idea was that the CRP payments would be sufficient to pay off the entire purchase price so that the owner would never have to make an out-of-pocket payment. No down payment was required. The government's CRP payments expired after 10 years but, under the bank's loan program, the farm loans would be paid off before the government payments terminated. The investors would make one mortgage payment a year which was less than the annual CRP payment. A balloon payment was due at the sixth year. It was expected that when the CRP monies ran out, the value of the lands would depreciate. All of these properties, except for one, sold for less than the original purchase price. The concept was that the plaintiffs would realize a profit when they sold the farmland.

Interstate Agri, through Davenport, had a power of attorney to operate the farms. In 1989 and 1990, acting on behalf of the banks and the plaintiffs, Davenport coordinated the pay-off of some of the loans. Because the loans were paid off early, the banks required that the plaintiffs pay the contingent interest. The bank maintains that the contingent interest provisions were inserted to protect it

---

1. *Killion v. Bank Midwest* declared the contingent interest provision illegal. 886 S.W.2d 29, 31–32 (Mo.App.1994).

2. The loans at issue here were made by at least four different banks, which were all owned by Gary Dickinson, the head of the Dickinson Financial Group. All of the banks have been merged with the appellant, Bank Midwest.

in the event the farms were sold before the bank was paid in full. The plaintiffs voluntarily paid the contingent interest, which was calculated as follows:

> 40% of that sum by which the gross price of the property exceeds: 1) the outstanding balance of this loan on the date of sale if sold prior to the Maturity Date, or 2) the outstanding principal balance on the Maturity Date if sold after the Maturity Date.

The contingent interest rate was 40 percent on the Missouri and Iowa farm properties and 50 percent on the Colorado properties. The amount of contingent interest paid by the individual plaintiffs on the various notes was:

| | |
|---|---|
| Gorman–Vanderhoof | $12,204.96 |
| Gorman–Gorman | 14,048.76 |
| Davenport | 14,275.12 |
| Interstate Agri | 7,852.21 |
| Interstate Agri | 7,411.85 |
| Beachner | 10,315.87 |

The standard of review, with respect to the trial court's ruling on the summary judgment motion, is in accordance with *ITT Commercial Fin. Corp. v. Mid–America Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993). The standard of review on the bank's third point, regarding the trial court's decision denying the set-off after the bench trial, is pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

In the present case, the plaintiffs paid off all of the promissory notes including the contingent interest demanded. Thereafter, in *Killion v. Bank Midwest*, this court determined that the contingent interest provision violated Missouri banking regulation 4 C.S.R. 140–6.050. 886 S.W.2d 29, 33 (Mo.App.1994). Consequently, the individual investors and Interstate Agri sued the bank for the contingent interest that they paid to the bank. The bank contends that, because the parties have fully performed their respective obligations under the loan documents, the plaintiffs should not be permitted to undo those transactions regardless of the *Killion v. Bank Midwest* decision holding the contin-

gent interest illegal. The issue presented by the bank is whether illegal interest, in an otherwise legal contract, may be recovered from the creditor after the transactions have been completed. In the present case, there is no factual dispute, thus the question is one of the law as to whether the plaintiffs have a cause of action against the bank for repayment of the contingent interest.

The bank argues the general law that "neither party to an (illegal) agreement that has been executed on both sides will be aided in recovering what has been parted with under the agreement." *Gardine v. Cottey*, 360 Mo. 681, 230 S.W.2d 731, 740 (Mo. banc 1950)(quoting 12 Am.Jur., Contracts, § 213, p. 724). *See also Murray v. Murray*, 293 S.W.2d 436, 442 (Mo.1956); *Baker v. Whitaker*, 887 S.W.2d 664, 668 (Mo.App.1994). As a second part of its argument, the bank contends that the trial court erred in failing to hold that the contingent interest provisions in the current case were valid because they were directly tied to the profitability of the plaintiffs' business.

In *Killion v. Bank Midwest*, after noting that Bank Midwest was a state banking institution, regulated by the state banking regulations, we held that a contingent interest provision, similar to the one here, was illegal and unenforceable pursuant to 4 C.S.R. 140–6.050.[3] *Id.* at 33. We also held that usuary laws are designed to protect the consumers and that when usuary interest is part of the agreement "*usury invalidates that part of the agreement which provides for illegal interest.*" *Id.* (emphasis added). The court specifically noted that only the actual debt and the *legal* interest are recoverable.[4] Thus, the usurious contingent interest provisions of the promissory notes at issue here are illegal and unenforceable.

■ The bank's first argument is premised on the idea that because the promissory notes were paid off and were fully completed transactions, they cannot now be reopened,

---

**3.** The bank does not make any distinction between the contingent interest provision in this case from the one condemned in *Killion v. Bank Midwest* other than what is discussed in this opinion.

**4.** Most of the various promissory notes in this case carried a rate of interest of nine percent. The nine percent interest was collected by the bank, and is not an issue here.

absent fraud, fear, duress or omission or misrepresentation of the facts. *Gardine v. Cottey*, 230 S.W.2d at 738; *Murray v. Murray*, 293 S.W.2d at 442. All of the contracts described in the cases cited by the bank had an illegal purpose. For example, in *Gardine* the wife agreed that, in the event of a divorce, she would convey to her husband all of her interest in their farms if, in return, the husband would permit her to obtain an uncontested divorce. 230 S.W.2d at 738. After the divorce, the wife returned to court requesting that the agreement be set aside. *Id.* The court determined that the agreement was void, illegal, and against public policy. *Id.* at 739. The court reiterated the general rule, as advanced by the bank here, "that neither party to an [illegal] agreement that has been executed on both sides will be aided in recovering what has been parted with under the agreement." *Id.* at 740.[5]

*Murray v. Murray* was also a divorce proceeding. 293 S.W.2d at 437. Neither party was innocent and it was entirely possible that neither would have been able to obtain a divorce. They entered into a separation agreement which the appellate court determined was designed to bring about and promote a divorce. *Id.* at 441. The court held that such an agreement was against the public policy of the state, requiring that it be adjudged void. *Id.* The court noted that the contract was fully executed on both sides and stated the general rule noted in *Gardine*.

 In both cases, the court determined that the agreement itself was against public policy and, therefore, void. When the subject or purpose of a contract concerns the doing of an illegal act or is against the public policy of the state, the contract will not be enforced by the courts. The agreements in *Gardine* and *Murray* (and a number of other cases) were invalid because the purpose of the agreements was either illegal or violated the public policy of this state. The contracts were void in whole because of their illegal purpose. In each case, the parties to the contracts were *in pari delicto*, thus equally

culpable. These cases stand for the proposition that courts will not enforce agreements, although completed, that violate the state's public policy or are illegal, absent some extenuating circumstance. Generally, the parties will be left as they were.

 The promissory notes here are of a different character. The bank loaned the plaintiffs money which they were obligated to pay back, plus a reasonable and agreed upon sum for use of the money. The law does not disturb those terms. They are neither illegal nor against public policy. As noted in *Anderson v. Curls*, "[u]sury invalidates that part of the agreement which provides for illegal interest and only the actual debt with legal interest may be recovered." 309 S.W.2d 692, 696 (Mo.App.1958). The loan documents here concerned funding the purchase of farm property in order to take advantage of the government's farm program, all of which was perfectly legal and proper. While the purpose of the loan documents was legal, they contained an illegal provision, in this case, usurious interest.

Usury does not invalidate the loan. *Hecker v. Putney*, 196 S.W.2d 442, 445 (Mo.App. 1946). Usury, however, will invalidate that part of an agreement which provides for illegal interest. *Anderson v. Curls*, 309 S.W.2d at 696; *Gehlert v. Smiley*, 114 S.W.2d 1029, 1034 (Mo.1937). Missouri does not invalidate real estate mortgages just because the mortgages exact usurious interest. *Id.*

Under the common law of Missouri, the maker of a note "who voluntarily paid unlawful interest upon a usurious contract" could not recover it by suit. *Ferguson v. Soden, et al*, 111 Mo. 208, 19 S.W. 727, 728 (Mo.1892). However, while the debtor may not have had an affirmative cause of action to recover, he was not left without a remedy. Any unlawful interest would constitute a credit to the account, but the maker has no right to come into a court of equity and ask to have the sale set aside. *Id.* The court held that if the maker should misapply the proceeds, and pay the usury funds to the account which was

---

**5.** Notwithstanding the statement of the general rule, the court observed that the defendant overreached and committed a fraud against the plaintiff. The court determined that the wife's and

the husband's attorneys were not *in pari delicto* thus, sound public policy would be better promoted by granting, rather than denying, relief. Gardine, 230 S.W.2d at 731.

not legally due, "the court would interfere." *Id.See also Vandergrif v. Sweeney*, 158 Mo. 527, 59 S.W. 71 (Mo.1900).

■ It has been well established, for some time, that the debtor of a usurious note has a cause of action against the maker, irrespective of whether the transaction has been fully performed. *See Affiliated Acceptance Corp. v. Boggs*, 917 S.W.2d 652, 659 (Mo.App.1996); §§ 408.030.2 and 408.050.[6] In *Anderson v. Curls*, the court noted that usurious mortgage transactions have a statutory remedy. 309 S.W.2d at 696. For example, § 408.060 authorizes a borrower to plead usury as a defense to a suit for payment of excessive interest. In addition, § 408.050 authorizes a borrower "to recover the excessive interest charges and costs." *Affiliated Acceptance Corp. v. Boggs*, 917 S.W.2d at 659. *See also Addison v. Jester*, 758 S.W.2d 454, 458 (Mo.App.1988)(detailing the provisions of §§ 480.030 and 408.060, and determining that § 408.030 provides both the limits by which the contract rate may be measured and the penalty for the violation).

■ We fail to discern any rational basis to deny a cause of action to a debtor who has paid illegal interest under an installment contract based on whether the note has been fully paid or paid only in part. The statute does not set any limitations as to whether the note is fully performed or parts of it remain outstanding. *Addison v. Jester* specifically allows a debtor to bring a counterclaim for usurious interest. 758 S.W.2d at 457. In *Addison*, the court observed that § 408.030.2 is available as an offensive tool only as to the payments of usurious interest paid. *Id.* We read this to mean that if illegal interest is paid, whether the note has been fully per-

formed or not, the statute provides an affirmative remedy for the excessive interest paid. Therefore, the plaintiffs in this case had a cause of action against the bank for the return of illegal interest that the bank had charged and collected.[7]

[7] The bank's next contention is that because the contingent interest here was tied to the profitability of the plaintiffs' business, the contingency was legal. The bank also contends that the trial court erred in relying on *Killion v. Bank Midwest* because the plaintiffs here were investors, not farmers. Missouri state banking regulations state, in relevant part, that:

> A bank may contract to receive additional interest on any loan for business purposes contingent only upon the *profitability and successful operation* of the business receiving the proceeds of the loan.

4 C.S.R. § 140–6.050 (emphasis added).

Profit is understood to be revenues in excess of expenses, *Labor Discount Ctr., Inc. v. State Bank & Trust Co. of Wellston*, 526 S.W.2d 407, 424 (Mo.App.1975), or as defined by *Sidney Smith, Inc. v. Steinberg*, "the benefit of or the advantage remaining after all costs, charges and expenses have been deducted from income." 316 S.W.2d 243, 255 (Mo.App.1958).

The CRP program required that the land be seeded and mowed to prevent erosion. Interstate Agri was retained to manage the farms and to do the mowing and seeding. A review of these facts does not disclose a meaningful difference between the contingent interest here from that in *Killion v. Bank Midwest*. 886 S.W.2d at 31. The contingency is not related to the plaintiffs' in-

---

**6.** All statutory references are to Missouri Revised Statutes 1994, unless otherwise indicated. ·

**7.** The parties also discuss whether they were *in pari delicto*. Their argument hinges on who was more sophisticated in the affairs of banking. However, this dispute is not relevant under the facts here, because the promissory notes are not wholly illegal. Instead, the notes simply contain an illegal provision for which remedies are statutorily provided.

Even if the issue was germane to our decision, we would not conclude that the parties were *in pari delicto;* not because one is more sophisticated in business matters, but rather because the

statute makes only one of the parties to the contract the offender and gives to the other party the right to rescind or recover money paid. § 408.030.2. The statute does not treat the parties as being *in pari delicto*. See *Twiehaus v. Rosner*, 362 Mo. 949, 245 S.W.2d 107, 112–13 (Mo.1952). Twiehaus states an exception to the general rule that the void contract will not be enforced because the parties were not equally culpable in the eyes of the statute. Equitable considerations require that relief be given to the more innocent party although the contracts may have been fully performed. *Id.*

vestment, the amount they paid, the purchase price, or monies expended toward their investment, such as seeding costs, farm management, or mowing. Therefore, as in *Killion v. Bank Midwest*, we hold the contingent interest charged here is not tied in any manner to the profitability or the successful operation of the plaintiffs' purchase, ownership or operation of the farmland.[8]

The bank next argues that the court erred in awarding contingent interest to the plaintiffs because the remedy of restitution is available only when money is paid under a mistake of fact, and here the contingent interest payment to the bank was made under a mistake of law. *See Western Cas. & Surety Co. v. Kohm*, 638 S.W.2d 798, 800 (Mo.App.1982). The bank suggests that the plaintiffs pleaded, and the trial court decided, the case on a restitution theory. A review of the amended petition and the trial court's findings does not indicate that restitution was pleaded or that it was the basis for its decision. Thus, for that reason, it is not a true issue. However, it is not relevant whether the money was paid under a mistake of fact or law because there was no rescission of the contract as discussed in the first part of this opinion. Rescission is an action seeking to restore the status quo to the contracting parties by voiding their contract. *Ehlert v. Ward*, 588 S.W.2d 500, 503 (Mo.1979). We have declined to accept the position that the contract was abrogated and undone from the beginning, thereby restoring the parties to the position that they occupied before the contract was executed. *Phillips v. Bradshaw*, 859 S.W.2d 232, 235 (Mo.App.1993). In the present case, a provision in the promissory notes was canceled; the notes were not void. The cases cited earlier in this opinion give the plaintiffs a cause of action for return of the illegal interest paid. This is not a case involving the rescission of a void or voidable contract. Illegal interest charged may be pleaded as a defense and,

additionally, the debtor who has paid illegal interest may bring an action for its recovery. *Addison v. Jester*, 758 S.W.2d at 457.[9]

The bank's final point is that the trial court erred in denying its claim for unjust enrichment. The bank says that the plaintiffs received a lower interest rate, nine percent in most cases, and thus, should be entitled to a set-off against the trial court's award of contingent interest against the bank for the difference between the nine percent and the then prevailing rate of 11 percent. Because this issue was tried to the court, our standard of review is in accordance with *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Unjust enrichment includes a situation where one has received a benefit which would be inequitable to retain. *Patrick V. Koepke Const., Inc. v. Woodsage Const. Co.*, 844 S.W.2d 508, 515–16 (Mo.App.1992)(citing 66 Am.Jur.2d Restitution and Implied Contracts § 4 n. 47 (1973)). Thus, the measure of recovery is the amount of enrichment which would be unjust for one party to retain. *Id.* The bank offered evidence at trial that the prevailing interest rate for agricultural loans, at the time the bank made them to the plaintiffs, was 11 percent per annum. The bank maintains that the only reason that the plaintiffs received a nine percent interest rate was because they agreed to the contingent interest.

The trial court denied the bank's set-off claim, and made appropriate findings of fact. The reviewing court will view the evidence in the light most favorable to the trial court's judgment and will grant deference to the trial court's opportunity to judge the credibility of the witnesses. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). "The trial court is free to believe or disbelieve all, part or none of the testimony of any witness." *Id.*

---

8. In fact, the bank makes the argument elsewhere that the contingent interest provisions were for the bank's protection in the event the farms were sold before the completion of the CRP program. Such assertion indicates that the contingent interest was not tied to the business' profitability.

9. Even if the trial court decided the case on the basis that the contract was rescinded, it reached the right decision. *Lough by Lough v. Rolla Women's Clinic, Inc.*, 866 S.W.2d 851, 852 (Mo. banc 1993)(ruling that "if the judgment of the trial court is sustainable on any grounds, it will not be overturned on appeal").

The trial court made the following relevant findings:

6) The defendant, in drafting farm contracts for CRP loans, relied on government payments.

7) That defendant made the business decision to include a contingent interest portion to the CRP loans.

14) That defendant admitted that loans guaranteed by the government is a factor that goes into setting an interest rate.

16) That defendant did not consider the financial stability of the borrowers in their underwriting decisions of the CRP loans.

20) That defendant only considered the cash flow available under the CRP agreement.

21) That defendant's reliance on the cash flow availability was the only factor defendant used in setting the interest rate at 9%.

The court rejected the bank's position that the nine percent interest was in reliance of the contingent interest provision. There was evidence which supported the findings of fact that the credit of the plaintiffs' was not a factor in the loan because the CRP program was backed by the government. As long as the plaintiffs seeded and mowed the land, the government would make payments. The credit rating of the plaintiffs had little, if anything, to do with the nine percent rate of interest. The trial court believed that less than the prevailing rate was charged because the bank's loans were not at risk and that the bank did not consider the plaintiffs' credit standing when calculating the interest rate. Thus, the contingent interest played no part in the matter. Therefore, there was sufficient evidence to support the trial court's findings that the cash flow availability, and not the contingent interest, was the only factor used to determine the interest rate percentage.

The plaintiffs raise the final point. They contend that the trial court should have allowed them to amend their petition to plead fraud. So as to not further lengthen this opinion, it is sufficient to note that there was abundant evidence establishing that the plaintiffs had ample opportunity to depose the bank officer with the pertinent informa-tion, and determine any facts relating to fraud and thereby to amend the petition, long before the day of trial. In denying the motion to amend, the trial court did not abuse its discretion. *Neenan Co. v. Cox,* 955 S.W.2d 595, 598 (Mo.App.1997).

The trial court correctly held that the plaintiffs could recover from the bank the amount of contingent interest paid. Judgment affirmed.

BRECKENRIDGE, Presiding Judge, and ELLIS, Judge, concur.